How do you pronounce your name? Is it Verdesco? Yes. Good morning, Your Honor. Good morning. May I please, Dishonorable Court, Annette Verdesco on behalf of the appellant, Bruce Lowe. Based upon, first of all, Judge, Your Honors, I am not reserving any rebuttal on this case. Excellent. Based upon the recent directive that was issued by the court in this matter, my scope of oral argument will be limited to the Feretta issue. Well, hold it. Is it your contention that Mr. Lowe did not have any counsel at his sentencing? My contention is Mr. Lowe did not have effective legal representation. There was standby counsel present at sentencing only to advise him to limit it matters. Well, wait a minute. Let's talk about that. His standby counsel, according to the appendix, advised him more than 20 times during that proceeding. And he kept saying he'd like to consult with his counsel. And the record notes each such time. And the standby counsel actually called the witnesses with the person who called the witnesses for the defense. So don't we have to assume that he did have counsel? I mean, he got rid of the four preceding counsel, and the court said to him, well, you can't have a fifth, but I'll give you standby counsel. And we have held that standby counsel can be considered to be counsel for purposes of the law. So why shouldn't we? Isn't that the end of this case? No, Judge. Most respectfully, it's not, because the problem with this case, Judge, is the fact that there was no sufficient Feretta warning or colloquy given by the district judge to Mr. Lowe. What happened was — At what point should that colloquy, if you're right, have been given? It should have been given simultaneously with the initial warning that was given in October of 07. At that time, the district court specifically warned Mr. Lowe that if you make another request for additional counsel, I will deem that request for your position to proceed pro se. It was at that time the district court was obligated under Feretta and Welchry to give the second part of the Feretta warning and advise this appellant all the risks and dangers that are associated with proceeding pro se. When the government suggested that Lowe be given a Feretta colloquy fully explaining the dangers of proceeding pro se, Lowe objected and said he didn't want it. That's correct, Your Honor, but this is the problem with that. Why isn't that a waiver? It's not a waiver, Judge, because this is the other problem. Well, how do you waive something if you say I don't want it? Because the fact of the matter was the warning should have been given at the October hearing. It should have then been given again at the July hearing when he was ordered to proceed pro se. The government, by its own letter, realized the day after the hearing that there was a problem. There was no sufficient Feretta warning given. Now, appellant objected to it, but he was already pro se at that point. I didn't read any exceptions in Feretta, Welchry, or any of the seminal cases regarding right to counsel that an appellant in a pro se position can object to a Feretta warning. The district court still had an obligation. This is a fundamental right we're dealing with. Sixth Amendment right. Doesn't the Feretta warning turn, first of all, or be conditioned upon the clear and unequivocal assertion of the right to proceed? This is more of a hybrid case than it is a clear Feretta case because there was no unequivocal assertion of the right to proceed per se. Exactly the opposite happened, despite the government's representation. That's correct. It was a waiver by conduct case, which takes us into U.S. v. Thomas and U.S. v. Goldberg. And those cases, and even U.S. v. Salamo, those cases set forth, and my position to the Court is, that in waiver by conduct cases, a district court is required to give the Feretta-Welchry warning, whether it's pretrial or whether it's at the sentencing phase. But we said in Thomas, I know because I wrote it, if a district court has warned the defendant that he will lose his attorney if he engages in dilatory misconduct, any misconduct thereafter may be treated as an applied request to proceed per se and thus as a waiver of the right to counsel. That's correct, Your Honor. But there's a difference in my reading and interpretation of the cases. There's a difference between waiver by conduct of a fundamental right as opposed to forfeiture of a fundamental right. So you're saying his conduct here in moving to withdraw counsel and to move on from counsel is just not sufficient in terms of a misconduct or a forfeiture. Had he acted out against counsel, had he been, you know, if there was some underlying problem with the basis for his contentions, it would be different. But this conduct was merely he was not being represented to his liking. And the court went along. I mean, this case would have been a lot better if the judge had just refused to let counsel withdraw and say, you know, you have a choice here. You have counsel. You either proceed with counsel. You don't have a constitutional right to the counsel of your choice. You have Mr. I forget who it was. Renner. Renner at the time. You know, you either do that or you're per se. And here's what happens if you're, if you proceed per se. You're absolutely correct, Your Honor. You're absolutely correct. This case does not. There was some gaming of the system here. You know, repeated requests. There may not have been misconduct, but clearly the counsels were saying, you know, they can't get into any detail, but he's asking me to do something unethical. Well, isn't that sufficient to say, listen, you know, you keep doing this, you're out of luck. Judge, the problem I see is I see it being dilatory conduct. Absolutely. I do see that. I do not see it rising to the level. It's not dilatory. Repeatedly trying to get counsel to do something that no lawyer probably is going to agree to do because it bordered on unethical. Judge, I don't know that the record sufficiently portrays that or establishes that for us to come to a conclusion that he forfeited his right. They couldn't talk about it because of the privilege. So they couldn't really put that on the record. But what's a district court judge to do? I mean, you know, when you're a trial judge and this happens repeatedly, and the judge said this isn't going to go on until infinity, and it seemed like it was going to go on until infinity. Judge, I think what should have happened in this case is based upon what transpired when it came to sentencing, I think all the district court judge had to do to remedy the insufficient Faretto warning was to give Mr. Lowe the option of proceeding with the representation of counsel that was sitting next to him as opposed to having that counsel be standby counsel. Yes, but it didn't – what difference did it make since counsel – since he consulted with counsel more than 20 times and we have held that that's adequate? Judge, the – What possible difference does it make if you call him standby counsel when he's an activist standby counsel? He wasn't a part of the plan. The big difference that it made is the arguments that were pursued by Mr. Lowe, which was the challenging of the weapon jurisdiction, and the sentencing enhancement or sentencing entrapment or manipulation of sentence arguments directly went to the responsibility, that one-point decrease pursuant to United States Sentencing Guideline 3E1.1b. By losing that point, he was escalated into a higher sentencing range. I believe Counsel for Mr. Lowe would not have pursued those arguments. And that's where the prejudice arose. And the prejudice also – Do we have to find prejudice when it's an ineffectiveness – I mean, when it's a right-to-counsel case? Absolutely not, because you're dealing with a fundamental right. This strikes me as maybe the textbook example, if you were to prevail, of winning the battle and losing the war. Because what would happen, it would be – it would go back and be resentenced before the same judge, you're not suggesting that anything here would require remand to a different judge. He would get a forerunner warning. You can't get a forerunner warning, at which point he'd decide to either represent himself again or to allow the appointed counselor to represent him. And my guess is the sentence that came out of that proceeding would look an awful lot like the sentence that came out of what got us here today. I don't agree, Your Honor. And the reason why most respectfully I don't agree is I think that one-point reduction comes into issue. I believe it certainly comes into issue, because obviously he's not going to raise the same arguments he raised at the prior sentencing. If counsel were present with him and counsel's representing him, that one point comes into play. And you're talking 15, 16 months as to what higher exposure he was subject to. So I believe there is a difference here. I certainly do. And especially in light of the fact we're dealing with a fundamental right. I just might – It wouldn't really matter if you win the battle and lose the war. Doesn't cure the violation? No. Just to continue, the forerunner warning, if the government argues that the warning given by the district court at the time of sentencing was sufficient, I respectfully submit that argument lacks merit. As previously espoused, it was not timely. At that point in time, Mr. Lowe was already pro se. It was an after-the-fact warning. So it did nothing to remedy the situation at that point. Also, the district court judge failed to pretty much specifically warn Mr. Lowe of the dangers of proceeding pro se. And as I just previously set forth, the problems in presenting certain arguments and how that could affect reductions you may get under the guidelines. And finally, the district court did not offer counsel to this appellant. In light of the – Well, the district court offered Mr. Renner a standby counsel. I mean, he had already had four counsel. So what was the district court supposed to do? Judge, I believe there's a case that addressed standby counsel. Yeah, there is one. And it says in our court, and it says that standby counsel – I believe what it said, that the standby counsel did not cure the violation of the insufficient forerunner instruction. What case is that? I believe it's U.S. Is it U.S. v. Salamo? Yes, that's what it was, U.S. v. Salamo. Appointed counsel to serve as standby counsel was not a sufficient substitute for obtaining a valid waiver. And that's exactly what happened in this case. Standby counsel didn't cure the violation of the fundamental right. Well, no. In fact, in Salamo, we held that a criminal defendant's Sixth Amendment right to counsel can be waived if the waiver is knowing, voluntary, and intelligent. But that didn't apply to this circumstance since it was a waiver-by-conduct case. It was one of those hybrid cases where you have a defendant saying, I want to change counsel, I want to change counsel, but I don't want to proceed pro se. And that's the problem. You can't apply the knowing and intelligent and voluntary waiver to those hybrid circumstances. It's an unusual case. It is. What's your best case? It's not really a wealthy case. It may be closer to Salamo. What's your best case? I'm sorry, I don't understand. What is your best case? Authority. Case authority. I believe it's Goldberg and Thomas. And I believe it's Salamo. It's those three. We have also said that the use of standby counsel is a factor militating against a finding that the Sixth Amendment was violated. And that's James, 1991. I understand that. But it's clear in this case the standby counsel was present, but you didn't have in those circumstances, based upon my recollection, a violation or an insufficient FREDA warning. That's the problem. Standby counsel couldn't cure that because we had an inadequate warning here. Goldberg has a request. You're saying that if at the time Judge Rodriguez said, you know, you do this one more time, you'll be waiving and you'll have to go pro se. And if that happens, this is what's going to happen. So you just have to know that you're taking this step and this is what it means. That's correct. That's what FREDA and Welch re-require. The problem is he never gave the second part of the test, which is the most important part of the test. And even if the government argues that at the plea hearing he was advised of the nature of the offenses and the sentencing exposure, first of all, the plea hearing happened two years before the sentencing. And second of all, the plea hearing didn't address the interplay of the guidelines in relation to his case. In light of the same, I request resentencing on this matter. Thank you, Your Honor. Thank you very much. Good morning. Good morning. Good morning. I'm Assistant United States Attorney Norman Gross on behalf of the United States in this case. Your Honors, I heard Ms. Verdesco say that all that Judge Rodriguez had to do at sentencing was just say, you can proceed pro se or you can have Mr. Renner. Give him another chance to. But she's saying more than that. She's saying, tell him that. But when you tell him you can proceed pro se, then give him what FREDA and Salermo those cases require. You can't just say proceed pro se or take Mr. Renner. You've got to say proceed pro se, but if you do, and then give him the warnings, or if you don't want to do that, then you're going to take Mr. Renner. If you don't take Mr. Renner, you're going to proceed pro se. And keep in mind what I just told you what that means. I'd like to get to what warnings were required in a moment, but let me just address that point that she made. We know exactly what Mr. Lowe would have said had he been given that choice, and that was, I don't want Mr. Renner. And that's precisely what he said in his letter of August the 6th of 2007 when I proposed to judge belatedly, and this, I should just point out, this is a case usually I can come up here as the appeals lawyer and blame it on someone else in the district court who made a mistake, but the blame here is mine. I was the lawyer in the district court. And I realized too late that we didn't have a FREDA colloquy, which would have been the belt and suspenders method of doing it, when Judge Rodriguez finally, you know, was at the end of his rope and said, I told you, you're not getting a fifth lawyer. You're asking for a fifth lawyer. You're not getting a fifth lawyer. But it was, of course, Mr. Lowe who made the decision that there would be no FREDA warning because he objected to it. Well, no. I mean, it could have gone on. Actually, the FREDA warning probably should have been given at the prior stage when he was advised that, you know, this is the last shot, and if you do this, this is what's going to happen and this is what it means. But it really could have said, you have Renner, that's your lawyer. If you want counsel, you have a right to counsel, he's the one. You don't have a right to have counsel of your choice, so you choose that or you choose pro se, and this is what it means to do pro se. No question, Your Honor, that the FREDA warning should have been given at that time, but nothing had happened. By August 7th, when Mr. Lowe objected to receiving a FREDA colloquy, he knew very well what a FREDA colloquy was because in his letter he explained a FREDA colloquy is only appropriate when somebody asks to go pro se, and I'm not asking to go pro se. But on August 7th, there still hadn't been any proceedings in which Mr. Lowe was unrepresented. So even though the FREDA colloquy, and I don't want to say FREDA colloquy because that suggests that the full panoply of FREDA warnings are necessary in a case like this. And as Judge McKee pointed out in the Salimo case, because the only deprivation of counsel here involves sentencing, the full 14-point FREDA colloquy that Your Honor recommended in the Peppers case not only is not required, but it would be somewhat misleading because it talks about the rules of evidence and rules of criminal procedure. Let's back up here. He went to sentencing being unrepresented by counsel, and he did not want to be without having been told what the ramifications are of proceeding pro se. How do you defend that as not a violation of the Sixth Amendment right? When his conduct was not like in Thomas or others where there's violence threatened, et cetera. I defend it in three ways, Your Honor. First of all, his conduct was exactly like Thomas. I mean, the case is almost on all fours. There was no finding by the court that he was doing anything wrong. He said that it was just constant, but there was no statement by Judge Rodriguez that there was any arbitrariness, unreasonableness, let alone violence or anything. Violence, Your Honor, violence is only required for a forfeiture, and that's the Leggett case. And we're not arguing a forfeiture here. He didn't attack any lawyers. Thomas had threats, too. That's right. You said there were three things, and you only got to the first. Yeah, I'm sorry. The first thing is that there was a waiver by misconduct in this case. But not knowing the waiver because he didn't know the alternative, didn't know what pro se meant. So you're saying he chose to go pro se by saying he wanted another lawyer, but he had never been advised what it meant to go pro se. He had been advised of a number of things, Your Honor. He had been advised in his Rule 11 colloquy of what the penalties were. He had been advised that the guidelines would play a role. You're not going to argue that that's a substitute for counsel, are you? Your Honor, I'm going to say, consistent with this Court's opinions in McFadden and Stubbs, that warnings that are given to a defendant before a full-blown Feretta colloquy are sufficient. This Court has held that repeatedly. This is two years beforehand, though. But, Your Honor, what he got in this case, he got more than what the defendant got in either McFadden or Stubbs. In those cases, what the defendant had was a statement about the penalties and the charges at an arraignment. And all that happens at an arraignment is that the magistrate sits up there and reads things to the defendant. Here, he went through a Rule 11 colloquy where he was questioned by the judge on the record and said that he understood what all of the charges were and what all the penalties were, that he was subject to a mandatory minimum. He was told that the sentencing guidelines were advisory. He was told that the sentencing guidelines would work in a certain way. Your Honor, that... I don't know how that is a substitute for counsel at sentencing. I just... It's not a substitute for counsel at sentencing, Your Honor. The question is, were there sufficient... Let's... And I still haven't answered Judge Slob's questions about what the three factors were. One is that... I'm not going to let you sit down before you do that. I will, Your Honor. Continue with Judge Rendell. We didn't need a... I don't think that in the Thomas case, in which Judge Smith was the district court judge, he said at the point where he told the defendant this is waiver by misconduct, what he said was exactly what Judge Rodriguez said here. This is your fourth lawyer. You've been through three previously. Here's number four. There will be no number five. If you, in the future, tell me that you don't want Mr. Renner, you will go pro se. That's the key. That was a misconduct case. That is absolutely the same facts, Your Honor, that we had in Thomas. That's exactly what Judge Smith told the defendant in Thomas. He didn't use the magic words waiver by misconduct. He said that this is dilatory action. It's clear to me that you just don't want to go forward. And remember, Thomas is a case where the waiver was the waiver of counsel at trial, which is much more consequential than the waiver of counsel at sentencing. Physical confrontations, verbal abuse, tore up his correspondence, refused to Your Honor, there was both a forfeiture and a waiver by misconduct. Thomas' case deals with both of them. The district court, before sentencing, here said, over the various times when counsel has been replaced, I wanted to be sure that when you make those decisions that you are fully aware that in proceeding without an attorney, that you could be potentially subjecting yourself to additional problems because of the lack of full knowledge of the situation that are involved, of the law, et cetera. Now, certainly, attorneys have been provided to you. You can continue to insist on proceeding yourself. You have submitted documents, and you're indicating you did this with or without the assistance of anyone. Done it all by yourself, Mr. Lowe, yes. Is there anything about the process, the potential problems that you could be confronting without an attorney? Lowe says, I don't understand. The court says, for instance, there are issues involved with respect to acceptance of responsibility, which is precisely what your friend on the other side said. Other calculations within the pre-sentence report that the outcome of how the court would have to determine, that would depend on the facts as they are presented. Do you understand that? Mr. Lowe says, yes. And then the court says, okay, what I've done is to be more protective of your client. I've asked Mr. Renner to assist you if, in fact, anything occurs. And Mr. Renner did assist him. I don't, you know. It's all sufficient, Your Honor. I'd refer the court to my supplemental appendix, pages 52 and 53, where Judge Rodriguez tells Mr. Lowe in no uncertain terms that Mr. Renner is the last attorney. He says, quote, there's a limit to how many lawyers can be assigned to you under the circumstance of this case. This is a guilty plea case, Your Honor. This is a guilty plea case with stipulations. You know, what's at issue here is going to be where the judge, whether he should vary from the range or how he should sentence within the range. That's sort of the limited issues that are at stake at the sentencing. And after four lawyers, Judge Rodriguez was quite reasonably at the end of his rope. He says, there's a limit to how many lawyers can be assigned to you under the circumstances. So I'm saying very clearly this is the last person who will represent, who will respond to the motion. If you have disagreement with him, you argue it yourself pro se. Couldn't have been any clearer what the consequences were to Mr. Lowe not proceeding. Now, did, at that point, at that point. Kagan. Is the argument that what Judge Sloviter read is sufficient as a Feretta warning or are you saying there wasn't one necessary? A Feretta warning in the sense of Your Honor's description of the 14 questions in Peppers was not required. Judge McKee addressed that in his opinion in Selimo. He says when you take away someone's lawyer for sentencing, something different, different kind of warnings should be given in that circumstance. And so did Mr. Lowe get a full-blown Feretta colloquy? No, he didn't. Nor was he entitled to one. He was entitled to know that, under Thomas, this Court affirmed, even though the defendant didn't receive a full-blown Feretta colloquy. But was told there were risks, et cetera. That's right. So you're saying that in this situation, something is required, not Peppers, maybe not totally, but what happened in Thomas was enough and what happened here was enough. Right. And Your Honor, it's true that Judge Smith in Thomas said there's risks required because, by the way, again, he's going to trial and he had to warn him that you have to be familiar with the rules of evidence and the rules of criminal procedure, which don't apply in this case. And he did say, you know, the government attorneys are experienced litigators and you may be at a disadvantage. But I would argue that even if those warnings should have been given in this case, that this Court should still affirm. And I want to make clear the point I'm making here. This Court has said repeatedly that if a defendant's deprived of his right to counsel, there's no harmless error in the sense that the sentence, the proceedings would have come out the same way. But there's an antecedent question. You did make that argument a little earlier, though. You made that argument earlier. You said we all would know what would have happened had he received. You were arguing a homicidal error, I thought, a few minutes ago. If I did, Your Honor, I apologize. I don't mean to advance that argument because I think it's foreclosed by this Court's cases. But there's an antecedent question, and that is, this is like a Rule 11 proceeding in the sense that Rule 11 lays out in very clear detail the kinds of things that need to be said to the defendant before he can waive his fundamental right to a trial. But there's also, there's a harmless error component to Rule 11 violations. And this Court said in the case United States v. Powell, and I'm sorry that's not cited in my brief, and I can give the Court a citation. It's an opinion by Judge McKee. It's 269 F3rd 175. I'll get 269 F3rd. 175, and the page site is 185, and that's a 2001 decision by Judge McKee that says that even if there is error in the Rule 11 proceedings, that the defendant doesn't get all the warnings that he's entitled to, that you don't get any relief if the government can show that the failure to give a particular warning did not affect the defendant's willingness to plead guilty. Oh, that's a rule of procedure. It's not a constitutional right. It's not exactly on the law. Your Honor, it effectuates the constitutional right to have all the Sixth Amendment rights to a trial, to counsel. Isn't that homicidary that you're arguing? Sounds and smells and walks like homicidary to me. No, it goes to the issue of whether or not there were sufficient warnings that the absence of any particular warning didn't make a difference. It may be harmless error in that context, but it's not the harmless error that this Court says is not permitted. So the question then, and there's a difference, for instance, with Miranda. You know, the courts consistently say you've got to give the defendants, you know, their Miranda warnings, and if you don't give them all, then, you know, you. Rule 11 has a harmless error provision right in it. Right. But, Your Honor, this Court, this Court, for instance, in the McFadden opinion, which was one of the early Feretta opinions by this Court, said that there the defendant waived his right to counsel by misconduct, and the fact that he didn't get all the warnings, and there was a dissent by Judge Adams that didn't carry the day. Judge Adams said he wasn't explained about the disadvantages of proceeding pro se, and this Court said he got enough so that his waiver of counsel by misconduct should stand. Mr. Gross, I don't remember the question to which you said there were three answers. Because I said, because I had three fingers, and I said, based on this, why is that not right? And he said he had three. So we all heard black and a lot of three. Was your finger back to that? Yes, Your Honor. That was very effective. Unintentionally. You gave us the first, but I don't even remember. My three arguments are that this is a waiver by misconduct case. There's three ways to lose counsel. One is by an express waiver going through, you know, the entire Feretta quality. The defendant comes in, says, I don't want a lawyer, and the judges hold him in it. Let me give you your warnings. This is not that case because Mr. Lowe didn't say I don't want a lawyer. He just said I want a fifth lawyer, and presumably he'd want more after that. He wasn't satisfied with any lawyer. But you're a lawyer, and I hold that third question. Your letter did represent that it was a request to proceed pro se. You said in your letter. You know, Your Honor, that was not careful phrasing. I mean, the effect of that was that, you know, because the judge had said to him, if you ask for a fifth lawyer, you are effectively asking to proceed pro se, and my letter should have made that more clear. Okay. You've given us one and two. The second one is that this is invited error, that he would have gotten the Feretta warning if he hadn't objected and said, I don't want it. Can I turn that, can I just pose a hypothetical to the court to sort of illustrate why I think that's so? But he said he didn't want to proceed pro se. Right. He said, I don't need it. I don't want to proceed. Right. I just want a fifth lawyer. And the judge already told him you can't have that. It's Mr. Renner or nobody, and he said, I don't want Mr. Renner. What's number three? Number three is that if you look at the entire record, which I think this court has to do in deciding whether or not the defendant should go back and be resentenced, you know, and given this choice again, Mr. Renner or nobody, that the information here was adequate. And there's a number of factors that point to that. Number one, when the defendant was represented back in 2007 by Mr. Carff, you know, we came into court for what was supposed to be a sentencing hearing, and Mr. Carff moved to withdraw, and also moved to withdraw Mr. Lowe's guilty plea. And Mr. Carff says some interesting things in his motion. He said, I have met 12 times with Mr. Lowe. I have spent 50 hours preparing a sentence memo in this case. And I haven't been paid. And I haven't been paid, and he has rejected, you know, this sentencing memo that I've prepared for him. There can't be any question that Mr. Lowe knows what a lawyer can do for you at sentencing when he spent 50 hours with Mr. Carff going over a detailed sentencing memorandum. So that was number one. Then we skip ahead to when Mr. Renner is representing Mr. Lowe, and he gets Mr. Lowe to agree that he's not going to try to withdraw his guilty plea, and we're going to go forward to sentencing under the plea agreement, which had a big advantage for Mr. Lowe, and that is he wasn't going to get charged with 924C, which would give him another five years. And Mr. Renner said, we're going to stick with the plea agreement. We're not going to advance any arguments that this wasn't crack, or it wasn't 50 grams of crack at least, et cetera. And Mr. Lowe testified and said, that's right. I'm not going to make any sentencing arguments in derogation of the plea agreement. What happened? You know, not two months later, Mr. Lowe is moving to get rid of Mr. Renner, and he says why he's doing that with some precision. He says that he wants to get rid of Mr. Renner because, and this is on my supplemental appendix at page 76, I believe Mr. Renner is well capable of arguing my issues. He just doesn't want to. I'm very satisfied with him as attorney. He just chooses not to argue my issues because he's afraid I'm going to lose my three points. So he makes clear he doesn't want Renner, and the reason he doesn't want Renner is because he wants to make these arguments at sentencing, that he was selling freebase cocaine, not crack cocaine, that the guns didn't travel in interstate commerce, that he was subject to sentencing entrapment. That's how he wanted to proceed, and that's how he proceeded at the sentencing hearing. He was able to get the benefit of both worlds. He got to advance these claims that would try to get him out of the cost of the plea agreement without having to get rid of the plea agreement. He got Mr. Renner, their standby counsel, who was able to offer him advice, and yet he didn't have to abide by Mr. Renner's, you know, legal decisions that you can't put forward these arguments that violate the plea agreement. He still didn't lose all of his three points for acceptance of responsibility, by the way. The judge granted him two. He just said because the government's not moving for the third, you can't have the third. What do we know now on appeal? Your life is now over some time. Ms. Verdesco did not reserve any time for rebuttal. Ms. Verdesco, if you want to take just two minutes because we let Mr. Groskow... I would rather do that. We're talking about waiver. She waived it, but go ahead. You're Chief Judge. Given that omission, if you want... Pardon? Do you want... Ms. Verdesco, do you want to... Because we let Mr. Groskow get five minutes over and you stopped. Thank you, Judge. I would appreciate that. I think I even cut you off. Your Honor, it's clearly a waiver by misconduct case. As one of your honors set forth, Thomas involved abuse of an attorney, threatening an attorney, harassing an attorney. It just didn't solely deal with Thomas' request to have numerous changes in an attorney. But in Thomas, we said that certain things that the district court said made it okay because he was essentially warned. How about what Judge Sloboder said about the things that Judge Rodriguez told him? Isn't that sufficient given the kind of hybrid nature of this? No, because the problem, getting back to the crux of the argument, the problem here is even though he was warned his conduct, his repeated conduct in the future could result in him being pro se, he was not warned of the consequences and dangers. But what Judge Sloboder read were the consequences and dangers of going in there without having an attorney represent you. It's what I previously said, advancing meritless arguments at sentencing that resulted in you losing a point that you should have had by way of plea agreement that put you in a substantially lower sentencing range. But he knew that. Mr. Gross just read what your client said about, look, I don't want Mr. Renner because he's afraid I'm going to lose one of my three points. And he's dead on with that. He's exactly right. But didn't he have enough information to make an informed decision about whether or not he wanted to get some lawyer who would run the risk of maybe losing that third point? Absolutely not, because the other problem was when he proceeded to sentencing, and this was glaring from the transcript. Reading the transcript, it jumped out to me, and I'm assuming it jumped it out to your honors as well. His cross-examination of the forensic chemist and of the DEA agent pretty much put him in such a prejudicial position for sentencing. Because he didn't have a good case. Well, but it portrayed his extensive knowledge of the composition of narcotics and the drug transaction trade, and that was noted by the sentencing judge. So any discretion the sentencing judge may have given him if he was represented by counsel went out the window. That was a danger he was never advised of. But the judge wasn't going to say, listen, I don't know what you're going to do, but if you do something, maybe you're going to display your knowledge of coming in. The most the judge could do in this situation is just highlight the types of issues. If you do stupid, you're going to live with stupid. Absolutely. Absolutely. But you should have been told at the sentencing, listen, there's going to be a production of witnesses here. By your cross-examination of that witness, you may be revealing certain personal knowledge that may hurt you in sentencing. I think that's a fair instruction to give a defendant who's proceeding pro se at a contested sentencing hearing. Thank you. Mr. Podesta, we do understand your point. And, Elias, I'm going to give you a chance to try to even up the time. Thank you, Your Honor. I appreciate it. Have a good day, judges. It was a pleasure. Thank you. You have a very fine argument. Mr. Goose, you have a typically superb argument. You always do a good job. Ms. Podesta, I haven't seen you before, but a very good job. Thank you.  Let's take a break. Are you okay? I'm fine. I'm okay. You all right? Great.